Good morning, everyone. The first case is Berne Corporation v. Government of the Virgin Islands. Smock. Good morning. Good morning, Your Honors, and may it please the Court. My name is Tarolyn M. Smock, and I have traveled from the Virgin Islands along with the Attorney General of the Virgin Islands, Vincent F. Frazier, Attorneys Carol Jacobs and Tamika Archer, Assistant Attorney Generals. We're not going to ask you what the weather's like down there. Oh, you're not? Yes, I thought you would have had this in April instead of January, though. It's not for lack of envy, believe me. Well, come down. And I am here on behalf of the Government of the Virgin Islands, Ray Martin as Tax Assessor, and the Board of Tax Review. I reserve five minutes for rebuttal. The 1936 statute has long outlived its usefulness and now interferes with the Virgin Islands' ability to perform an essential governmental function. In Blue Bears, this Third Circuit Court of Appeals held. You filed a, the Congressional Act was what, in 07, is that correct? 2007, that's correct. And you filed how soon thereafter to try to have the order of the Court lifted? We filed immediately thereafter for some sort of an expedited relief. The Court didn't act very expeditedly. No, the Court did not act on the expedited relief. We filed Motion 60B motions. We had all sorts of hearings before the Court requesting that the injunction be vacated. We did everything that was possible and feasible under the circumstances because we realized that our financial straits were dire in the Virgin Islands. We told the Court that our government needed money, it needed revenues. We were very respectful and we were very sincere in our efforts in pursuing the rights of the peoples of the Virgin Islands. And I think that we went to the Court in many instances. We had various testimony before the Court. We had various officials, the government of the Virgin Islands appear before the Court. So you actually appeared before the Court? Yes, there were actually, we had hearings. Our Board of Tax Reviewers before the Court. We appeared before the Court to express our problems and our economic situation. And the Court, even in its partial vacature order, recognized that the Virgin Islands had economic problems that needed to be addressed. I think the Court was aware of that and the Court, in fact, recognized it also. There were many instances where we were before the Court. Tell us why there's no federal jurisdiction. There is no federal jurisdiction in this instance because Congress has made an unmistakably clear statement. Congress has said that the territory and property tax matters shall be treated as any other territory and state and it should have no restrictions whatsoever. Now, Congress did not use the same language as they used with Puerto Rico, though. The language there was more specific in the statute. Am I correct about that? I think that the language in this instance in 2007, which Congress used, it made it retroactive to 1954. I think Congress was quite specific. Congress clearly stated that there should be no federal impact in Virgin Islands. It said that this has long been the history. Congress even stated that it believed, as far as 1954, that it had given the Virgin Islands broad powers over its property tax matters. Does this mean, though, that if there's a federal due process claim, that Congress can't bar a constitutional claim just by a statute, though, can it? In property tax matters, I think it's quite clear, and you have many cases, U.S. Supreme Court cases that have dealt with this issue, that in constitutional claims or due process claims, if a state court has the ability to consider those and can handle that and provides a plain, speedy, and adequate limit for constitutional issues in due process, then the appropriate place is to go before the state court, and in particular, property taxes. So are you conceding, then, with that answer, that the 2007 repealer did not by itself oust the District Court of Jurisdiction with respect to these due process claims? No, I think that by itself, the 2007 amendment, along with the comments from Congress, in fact, that was the intent at that time was to oust the district court from all matters that are dealing with property tax. I think that even if you consider. Even constitutional. Even constitutional claims, very clearly constitutional claims, because it said you shall have no impact when it comes to the assessment administration and the collection of property taxes. And if you implicate constitutional. If in a constitutional situation, the assessment administration and collection is implicated, then it's very clear that Congress did not intend for there to be any federal impact in those instances. Well, I'm not sure that Congress has the power to foreclose a constitutional claim. But as you say, that there is Supreme Court language to the effect that the state court system can deal with the tax assessment and appeal issues on a speedy and reasonable manner. There may be deference to the state court system. Now, did Judge Gomez address that particular point in any of his orders? In fact, Judge Gomez, in his partial vacature order, recognizes that Congress has the power, the broad power to delegate to the Virgin Islands over many issues. And Judge Gomez also stated that Congress, in repealing the 1936 Act, gave the Virgin Islands broad power over the property tax matters in the Virgin Islands. Judge Gomez accepts that premise, I believe. Did Judge Gomez address the ability of the local courts to address this question? Judge Gomez has indeed, I believe, addressed that issue of local courts having the ability. Where in the opinions? Let me just clarify. I think that what Judge Gomez has done in his opinion, he has essentially stated that the Board of Tax Review is the only entity that can address the local matters. But that clearly is not true because we have a superior court and we have a Supreme Court. And I think that that's probably, that he seems to be basing it solely on the ability of the Board of Tax Review is the only entity to address those. And I think that that is incorrect because we do have a superior court and a Supreme Court. So he really, in response to Judge Smith's question, he really did not address. He really, he did not and he should have. But what about the immediate problem, which is that he believes that the Tax Assessment Board simply is not running the way it's supposed to, that there are tremendous backlogs, delays, no adjudications, and it's simply not functioning. I personally am the counsel to the Board of Tax Review for about a year and a half. And I know that when I first started there, there were approximately 500 and some cases. There are now, from 1998 to 2005, cases that were pending. And there are only 80 cases pending. And we have consistently met each month to handle those cases and to remedy that problem. So I know that the Board of Tax Review is functioning and it has functioned and it continues to function. And I think that Judge Gomez, we had testimony before Judge Gomez where you had the Commissioner of Finance testifying and you also had the Executive Director of the Board of Tax Review testifying. We provided affidavits after that point to demonstrate that we were in fact having hearings on a regular basis. We hired a hearing examiner. We hired additional persons to assist in that. We also had testimony before the court that although the Board may not have met for a period of time, it did not mean that the functions of the Board of Tax Review were not still active because the Executive Director continued to negotiate tax appeals. He negotiated with the tax assessor. There were reversion letters sent in excess of 200 reversion letters. Many taxpayers responded to those reversion letters. In responding to those reversion letters, many of them accepted it. Those who did not accept the reversion letters, the Board of Tax Review set them down specifically for hearings. Additionally, there is something else to consider, and this was also raised before the district court, that although the numbers may seem large, it says appeals may be 300 appeals, that does not mean that there are in fact 300 taxpayers. We have what we call chronic appealers, taxpayers who consistently appeal any tax bill. In instances since I have been there, I have seen where they have appealed a tax bill for one year and there was only a $2 difference. So you do have chronic appealers, and I think that is a significant amount of our taxpayers also who appeal. Also, you will also find that in this instance also, none of the plaintiffs have appeals before the Board of Tax Review. And also that issue was not fully addressed by Judge Gomez either. Any questions? Good, we will have you back on rebuttal, Ms. Smuts. Thank you very much. Thank you so much. Mr. Durr. Good morning. Good morning, Your Honors. May it please the Court. My name is Jim Durr, and together with Attorney David Bourne, I am here on behalf of Byrne Corporation and the other appellees in this case. We have split our time. I will be addressing settlement issues, jurisdictional issues, and Attorney Bourne will be discussing contempt issues. On a jurisdictional issue, there was an amended complaint in what, 2000? Is that right? Roughly? When was the complaint filed? The complaints were filed in early 2009 or late 1999. I think there was an amended one after. Was that correct? Some of the parties did file amended complaints. Following the trial in 2003, several of the parties also moved for leave to amend a conformative proof, which was never dealt with by the district court. And the primary claims in 2000 in the complaint were what? The claims were a violation of 48 U.S.C. Section 1401A, also constitutional due process and equal protection violations arising under the revised Organic Act and the 14th Amendment. Now, the due process and the equal protection arguments, were they ever teed up and resolved by the court in 2003? The issues were tried and they were briefed, or at least included in the proposed findings of fact and conclusions of law. In a footnote to his opinion, Judge Moore found that because he was reaching the statutory violation issue, it wouldn't be appropriate for him to reach the constitutional issues. Although I should point out that in this court on the appeal, the court was assuming that even if the government's argument regarding the repeal of 1401 applied, the fact that we had alleged federal constitutional due process and equal protection claims was sufficient to confer jurisdiction. And I submit that that issue has already been decided. The court has already said the repeal of 1401, whether it's by the enactment of the revised Organic Act, as the government argued at that time, or by the enactment of the public law that repealed 1401 in this case, is irrelevant because there were additional claims that were pled that gave the court jurisdiction. There was a question also regarding the... Let's stay on that for a second. Ms. Smock says that there can be no federal due process jurisdiction here. Your Honor, I completely disagree with that statement. Congress, if it wanted to, could not divest the federal courts of jurisdiction to decide federal constitutional issues. And I... That goes to its authority. What does the statute say, if anything, with regard to constitutional claims? Section 1401 or the repeal, Your Honor? The repeal. The repeal said nothing. The repeal is a one-sentence statement that says that 48 U.S.C. 1401A is repealed effective to the date of the revised Organic Act of 1954. That's it. Everything else that the government cites and appears to argue is statutory language or is somehow binding on this court is merely contained in the report of the committee that prepared the bill and some arguments that were made at the Congressional hearing before the Senate. Should the district court have addressed the proper functioning or the functioning at all of the state court system to handle these kinds of appeals? It seems to me he did not. And does it make any difference? No, it doesn't make any difference at all, Your Honor. There's no principle of law that says that plaintiffs should be required to pursue federal due process and equal protection constitutional claims, not in the federal district courts, but in the local territorial courts. As I said before, Congress just doesn't have the power to do that. And Congress also doesn't have the power to go as far as Attorney Smock argued in completely divesting the federal system of any oversight over the property tax system in the Virgin Islands. If Congress did that, then they would be in violation of Article 4, Section 3, Clause 2, the Territories Clause of the Constitution. And they would also be in violation of the Revised Organic Act of 1954 that specifically said that Congress reserves the right to overrule any act of the Virgin Islands legislature. So they cannot give that type of power to the legislature or the local government. And if you read the statutes themselves, it's clear that there was no intention to do that. What was the intent of the repealer? It's never been clearly stated, Your Honor. My personal opinion is that the intent was to violate or to repeal the statute that the government was violating in order to allow them to get out from under their obligations under the Burns Settlement Agreement. I haven't seen anything that indicates anything to the contrary aside from some lofty rhetoric about turning the property tax system over to local control. There's no legislative history that says that, is there? There's legislative history that says that property tax issues are generally considered matters of local concern, and we would like to give the Virgin Islands control over those local matters. The problem with that, we weren't allowed to have any input into that. That's just what Congress says. But that ignores the fundamental difference in the relationship between the federal government and the territories. This leads directly into the issue as to whether the Tax Injunction Act even applies to the Virgin Islands. Again... Do we have to decide that? No, Your Honor. I was just going to say, in the words of Yogi Berra, this is deja vu all over again. It's already been decided. We've addressed that before. It was addressed by this court in the Pan American... All the way back in Pan Am, and more recently in Bluebird's Castle. Exactly. The important thing to note is that the Pan Am case arose in the context of a gross receipts tax, not in the context of a property tax. So the government's arguments regarding 1401, number one, are completely irrelevant, and number two, this court's already ruled on the issue, that it does not apply. With regard to the functioning of the Board of Tax Review, Judge Gomez did address the issue in the context in which it's set up in the Virgin Islands. The normal process in the Virgin Islands for pursuing an appeal is, until the recent amendments, you pay the last unappealed amount of tax, take an appeal to the Board of Tax Review. Statutorily, the Board is required to act within, at the time, 60 days, now 120 days, and render an opinion. If you're not satisfied with that, you can proceed to the district court by way of a writ of review, which has an extremely limited scope. Basically, there's no de novo review, as there were in the other cases cited by the government that found that there was sufficient protections for a taxpayer. The judge is limited to finding if there was substantial evidence to support the Board's finding, and if there was, then he just acts as a rubber stamp. The Third Circuit, when it was hearing the appeals from the Territorial Court, now the Superior Court of the Virgin Islands, has said that they don't review those factual findings that have already been approved by the district court judge. So you don't have a procedure for actually correctly challenging the system in a way that's constitutionally permissible and that gives a... May I finish the sentence, Your Honor? We'll give you a few more minutes, and we'll give Ms. Smock a few more minutes on her rebuttal. There's not a procedure in place that allows for the de novo review by a judicial officer and that allows for the raising of constitutional claims. I've done a number of appeals before the Board of Tax Review, and I can tell you that if we started discussing constitutional issues with bankers and Anything else you want to tell us? No, Your Honor. I believe I've addressed that. Attorney Born can pick up anything that I might have missed and also address the contempt issues. Any questions? Good. Mr. Derr, thank you very much. Thank you, Your Honor. Mr. Born? Good morning, Your Honors. Good morning. Pleasure to be appearing before you today. I may please the Court. My name is David Born of the Born Firm, and I, along with Attorney Derr, represent the appellees. I would like to address for you principally and to respond to any questions you may have regarding principally the contempt issues. We view this principally as a matter of the contempt order directed at the Decatur decision. It is principally addressed as a matter of the respect of the law and of the court. Did the government at any point, did the government of the Virgin Islands at any point actually dispute that they had disobeyed the 2003 order? No, Your Honor. If you, in fact, look at the supplemental appendix of the transcript of the proceeding on the supplemental appendix starting at page 21, you have an exchange there between the judge, the tax assessor, and Attorney Jacobs in which it is clear that the government does not dispute any of the elements of the contempt, the three elements going to contempt. What the government disputes is the validity of the underlying injunction, the 2003 injunction. And it took it upon itself to make that interpretation that it was invalid because of the issues it raises here, the Tax Injunction Act, the repeal of 1401A. And impossibility, didn't they? And impossibility because those elements then set an impossible scenario that it could not do what the court had ordered in the 2003 injunction and modified by the August 2003 amendment to issue bills at the 1998 assessed values. It is important to note that the government submitted to the jurisdiction of the court under a motion for vacating of the injunction by a December 5, 2007 motion under Rule 60B, which according to the premises of this court's rulings is the appropriate mechanism to have a determination if there is an applicable change of law or other circumstances that would permit them to deviate from the established principles of the injunction. Instead, what they do while that motion is pending and out of pure impatience, and yes, it may have been impatience driven by economic and financial circumstances, but this court has also said They would use a stronger word. It's not impatience. It was extreme frustration. But this court has also stated that in those circumstances the party may also petition to this court for further emergency relief. That was not done. Instead, the government, through the governor, to the legislature, petitions the legislature for the approval of the amended tax provision, tax assessment statute. They then use that statute on a notice to the court, which is the informational notice in the appendix, in the joint appendix, that simply says to the court, please be advised we are issuing the tax bills for 2006 at the 2006 rates and values. This is in direct contravention of the court's outstanding order. Let me see if I understand correctly. With the repeal by Congress of the tax act back to 1954. Correct. What is left of your claims? The repeal only removed the element of the application of the federal statute. The remaining parts of the injunction that apply to the enforcement of the settlement agreement, the Byrne Settlement Agreement, the determination of the assessed, the propriety of the assessed valuations according to that agreement, the functioning of the Board of Tax Review, and the functioning of the refund mechanism are all still viable and outstanding. But they haven't been ruled on by the court. They have not been ruled on by the court to this point. The last two specifically were exempted from the court's decision in 2003. The court held a hearing in June of 2008 on the issue of the functioning of the Board of Tax Review. That was incorporated into the partial vicator. The court also held a partial hearing status conference on the issue of the master's report. That has not been ruled on. So, those are the elements that remain outstanding and fully enforceable by the operation of the contempt as a coercive measure. Remember that this matter has been outstanding for nine years, six since the 2003 decision. And so, the court has been operating with a certain amount of frustration as well that the government complete what it was supposed to do when it entered the original Byrne Settlement Agreement. Hence, the contempt sought to coerce the government back into the position of what it was supposed to be doing. And it gave the keys to the government to purge the contempt. It permitted the government to initiate what the judge specifically asked to the government in the course of the proceeding. Can you not go back as you did before in 2003 to the legislature to put back into place the provision that the tax bills can and should be issued at the 1998 assessed values? It said nothing per se in terms of what would happen to the operation of the revised statute. But it said, couldn't you do that? And if you did that, that would then permit the government to come into compliance with the injunction and the government would have its keys to then come back to the court and say, we have made substantial efforts to comply with the injunction. At which point the court could then make its decision on terms of the release of the government from the contempt sanctions. Any other questions? Anything else you want to tell us? No, Your Honor. Good, Mr. Byrne. Thank you very much. Thank you very much. Ms. Smart. Thank you. Thank you again. First of all, the court has said in its partial vacature order that there was only one matter outstanding and that was the Board of Tax Review. The court clearly stated in its partial vacature order that the Byrne Settlement Agreement had been resolved, had been essentially dissolved, I should say, with the passage by Congress of the repeal of the 1936 Act. That was not an issue that was left for the court to decide or determine. The court went further to say that the contract clause also could not survive in this instance in that there was no impairment of a contract clause as a consequence of the repeal of the 1936 Act. Additionally, in 2008 the What about the propriety of the assessments, the functioning of the Board of Tax Review, and the refunds? The court said in terms of the propriety of the assessment, it believed that the board was functioning to some degree. The court also went into other issues in terms of the assessment, but also if you have to consider that in terms of the assessment by the Board of Tax Review, once Congress repealed the 1936 Act, that was the only basis that the district court had to consider assessments and collections. And once that was repealed, the district court lost its jurisdiction over that and could not consider those issues. And a court can lose its jurisdiction at any point in time in a proceeding, and once it loses its jurisdiction, it no longer has a right to continue to hear the matter. In 2008, I'm sorry. I'm lost. I'm sorry. If there was a claim that they made in 2000, the due process and equal protection claims, that the functioning of the Board of Tax Review in doing its assessments and also the refunds somehow violated constitutional law and the court hasn't ruled on those yet, aren't those still before the court? Those are not before the court because once it was repealed, there was no federal due process jurisdiction in property tax matters. And I think that it's very clear, and this court has also held, that property taxes are generally governed by state law. And it says that the importance to the states of their taxes. So you agree that Congress cannot take away a constitutional claim. Congress can take away a statutory claim. Congress did take. It can do something with 1401, which it did. But do you agree that Congress cannot do away with a constitutional claim? I think that in property tax matters, it's very clear the courts have held that if it's property tax and if a state court can hear the constitutional matters, then it should be before the state court. And I think that's what we have been arguing, that the constitutional matters issues here are based on the federal court having jurisdiction. And once it lost jurisdiction, those constitutional matters could be heard by the state court. And in property tax matters, they should be heard by the state court. And I think a fair assessment says that. And also this court, I believe, says that. What I hear you saying is the answer sort of is a conclusion. I'm sorry? Let's assume you're right, that this may affect how you come out with regard to the due process and equal protection claims. But the court at some point has to make that decision, which it has not yet done so. In other words, that's the merits. That's not before us. I think that once the court lost jurisdiction over property tax, it does not make that decision. You may be right and you may prevail. But it has to be ruled on by Judge Gomez first, does it not? I do not believe that it does have to be ruled on by Judge Gomez. I'm sorry. That's playing with fire. Are you suggesting, so I understand. No, I'm sorry. Go ahead. So I understand your position. Are you suggesting that there is something before us in this appeal that would result in a ruling that would oust the District Court of Jurisdiction such that Judge Gomez could not reach the merits that Judge Ambrose is referring to? Well, I think that there are things before us that have been before the courts. If we look at the principles of comity and federalism, we could start there and we can see that. How is federalism at all applicable here? Because it clearly says that there shall be no federal impact in matters that us. And Congress has broad powers to delegate to the territories those same powers that the states have. Is there any authority that suggests that federalism is applicable to the territories? I think. Tell me language from some source anywhere because I'm completely unaware of it. I think that in. I don't think Plout helps you. I'm sorry? I don't think the Supreme Court case in Plout, P-L-A-U-T, helps you. Well, I think in fair assessment it may help us, and I think that possibly. How's that? I believe that also in Perez it may help us. I believe that because I think that even that it seems to me very clear. Where in Perez and where in fair assessment does it answer the question of Judge Smith your way? Let's see. Well, I believe that when it comes to federal rights, it says in fair assessment at 116, I think that we could go into at 116 in fair assessment it starts talking about the assertion of constitutional rights. And I believe that it is implied from that that if the section 1983 action constitutional right does not prevail in property tax matters. So I think that you could imply from that that those principles would also apply because it clearly means to me that there should be no federal impact in property tax matters, in particular unless Congress has spoken differently. Why don't you quote the actual language in page 116? It says that taxpayers are barred by the principle of comity from asserting section 1983 constitutional actions against the validity of state tax systems in federal courts. State tax systems. Yes. And I think that state tax systems, but I think in this instance what Congress has done, Congress has treated the territory of the Virgin Islands for property tax purposes the same as a state and it has required that there be no federal impact. I understand. You have answered my question. Yes. Largely. Let me just try to close the circle. Yes. You are then though conceding, I assume, that there is no language in any Supreme Court decision nor a decision of this Court for that matter because we do have some language from which we could conclude that the principles of federalism apply to a territory. You are basing that argument entirely on the language of the repealer? No, I'm not basing it entirely. I'm basing it implicit to the statute. Yes, it's implicit there, I believe, but I think that there's enough jurisprudence to also confer that. Good. Anything else? No, that's all. Thank you. Good. Thank you very, very much. Thank you. We appreciate lawyers coming here from the Virgin Islands. Oh, thank you so much. Hope nobody catches a cold in the meantime. So far we're healthy. Very good. And we understand you're also visiting the Virgin Islands. We will be down there in a few, in a couple of months. Well, good. We hope to see you then. Thank you so much. Thank you so much. The case was very well argued. We'll take the case under advisement. The Court would like to have a transcript of the oral argument, and we would ask that both parties share the costs of this. Would you please check with the clerk's office as you leave? They'll tell you how to accomplish this. But the transcript will aid us in writing the opinion in this matter. Thank you very much.